Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| UE LAS CATALINAS LLC<br><br>Apelada<br><br>v.<br><br>MOBILE TECHNOLOGY, LLC H/N/C GAME LAND<br><br>Apelante | TA2026AP00217 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Sobre: Desahucio y Cobro de Dinero<br><br>Caso Núm. CG2025CV04162 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece ante nos la parte apelante, Mobile Technology LLC (en adelante, parte apelante o Mobile Technology), y nos solicita la revisión de la *Sentencia* emitida el 2 de febrero de 2026, y notificada el 6 de febrero de 2026, por el Tribunal de Primera Instancia, Sala de Caguas. Mediante esta, el Foro Primario declaró *Ha Lugar* la demanda presentada por la parte apelada, UE Las Catalinas (en adelante, parte apelada o UE).

Por los fundamentos que expondremos a continuación, se confirma la acción de desahucio y se devuelve al Tribunal de Primera Instancia la acción de cobro de dinero para que, con la prueba presentada, determine las partidas correspondientes que sustenten la cuantía adjudicada de $1,010,621.58.

**I**

El 2 de diciembre de 2025, UE presentó una *Demanda* de desahucio sumario y cobro de dinero contra de la parte apelante.[1] En la misma, UE alegó ser el dueño del centro comercial *Shops at*

---

[1] Apéndice del recurso, Entrada Núm. 1.

*Caguas.* Sostuvo que, el 1 de diciembre de 2024, suscribió un contrato de arrendamiento con Mobile Technology para el uso de ciertos espacios en dicho centro comercial. Indicó que, conforme al contrato, la parte apelante debía pagar un canon mensual mínimo de tres mil quinientos dólares ($3,500.00) hasta diciembre de 2024 y, desde el 1 de enero de 2025 hasta el 30 de noviembre de 2025, un canon mensual de tres mil cuatrocientos dólares ($3,400.00). No obstante, UE adujo que Mobile Technology incumplió con el pago de los cánones pactados. Además, arguyó que la parte apelante permaneció en posesión de los espacios en controversia, así como que continuó operando su negocio, sin autorización, y pese a la terminación del contrato y a la acumulación de múltiples cánones vencidos. A tenor con lo anterior, UE solicitó el desahucio sumario y el cobro de los cánones adeudados, los cuales alegó, ascendían a un millón diez mil seiscientos veintiún dólares con cincuenta y ocho centavos ($1,010,621.58). Asimismo, reclamó cinco mil dólares ($5,000.00) por concepto de gastos, costas y honorarios de abogado.

Luego de varios incidentes procesales, el 2 de febrero de 2026, la parte apelante presentó su *Contestación a Demanda.*[2] En síntesis, arguyó que pagó los cánones de arrendamiento, y que el referido contrato se renovó tácitamente. Además, sostuvo que UE no realizó gestiones para procurar el desalojo de Mobile Technology. Planteó que tampoco hizo gestiones de cobro, previo a presentar la demanda de epígrafe, por lo que la alegada deuda no era vencida, líquida y exigible.

Conforme surge del expediente ante nuestra consideración, el 2 de febrero de 2025, se celebró la vista en su fondo mediante videoconferencia. Durante esta, la parte apelada presentó el testimonio de David Vázquez Collazo, en su carácter de presidente

---

[2] *Íd.*, Entrada Núm. 15.

de Mobile Technology, y de Alma D. Negrón Díaz, en su carácter de gerente de arrendamiento del centro comercial. A su vez, presentó copia del contrato de arrendamiento intitulado *License Agreement* y copia de la carta de terminación de contrato intitulada *Notice of Termination.*

Según surge de la Transcripción de la Prueba Oral, las partes suscribieron un contrato de arrendamiento mediante el cual la parte apelante se obligó a pagar un canon mensual de tres mil quinientos dólares ($3,500.00) desde el 1 de diciembre de 2024 hasta el 31 de diciembre de 2024 y un canon mensual de tres mil cuatrocientos dólares ($3,400.00) desde el 1 de enero de 2025 hasta el 30 de noviembre de 2025. Surge, además, que el 15 de abril de 2025, la parte apelada remitió a la parte apelante la carta de terminación de contrato, mediante la cual fijó como fecha de terminación el 30 de abril de 2025. Asimismo, surge que la terminación del contrato obedeció a que la parte apelante utilizó el espacio arrendado para la venta de mercancía ajena al uso autorizado bajo el contrato de arrendamiento.[3]

Al examinar el contrato de arrendamiento en sala, se leyó la sección *Addendum*, inciso catorce (14), la cual establecía que, de permanecer la parte apelante en el local con posterioridad a la terminación del contrato, debía pagar una suma equivalente a dos punto cinco (2.5) veces el canon de arrendamiento.[4] También se estableció que todo pago no recibido a su vencimiento generaría una penalidad de diez por ciento (10%) sobre el monto adeudado por cada día de mora.[5] En cuanto a la suma de $1,010,621.58, el señor Vázquez Collazo expresó que nunca recibió comunicación o carta alguna mediante la cual se le reclamara dicha cantidad. Añadió que

---

[3] Transcripción de la Prueba Oral, pág. 44.
[4] *Íd.*, pág. 17.
[5] *Íd.*, pág. 43.

se comunicó en varias ocasiones con el centro comercial con el propósito de que se le informara el balance adeudado, sin que dichas gestiones recibieran respuesta.[6] Por su parte, respecto a la suma en controversia, la señora Negrón Díaz testificó que desconocía si se había remitido alguna reclamación, debido a que las comunicaciones relacionadas con balances y reclamaciones correspondían al Departamento de Contabilidad.[7]

Tras la celebración de la vista en su fondo, el 6 de febrero de 2026, el Tribunal de Primera Instancia notificó la *Sentencia* apelada.[8] En esta, el Foro Primario formuló varias determinaciones de hecho, entre las cuales consignó que la deuda actual de la parte demandada en concepto de cánones de arrendamiento tardío, más cargos en concepto de mora, según el inciso 6 del *Addendum* del contrato de arrendamiento, ascendía a un millón diez mil seiscientos veintiún dólares con cincuenta y ocho centavos ($1,010,621.58). En consecuencia, declaró *Ha Lugar* la demanda y condenó a la parte apelante al pago de dicha suma, más los intereses legales correspondientes, así como mil quinientos dólares ($1,500.00) por concepto de honorarios de abogado. Además, ordenó a Mobile Technology desalojar el espacio en controversia. Por último, el Foro de Instancia estableció una fianza en apelación por la cuantía de quince mil dólares ($15,000.00).

Posteriormente, el 12 de febrero de 2026, la parte apelante presentó una *Moción en Solicitud de Nuevo Juicio*.[9] En síntesis, sostuvo que, tras la celebración del juicio, la parte apelada le remitió por correo electrónico un estado de cuenta que reflejaba un balance pendiente sustancialmente menor al reclamado en la demanda. A la luz de ello, planteó que, de haber contado con dicha información, el

---

[6] Transcripción de la Prueba Oral, págs. 30-31.
[7] *Íd.,* págs. 51-52.
[8] Apéndice del recurso, Entrada Núm. 20.
[9] *Íd.*, Entrada Núm. 21.

resultado del pleito habría sido distinto. De este modo, solicitó la celebración de un nuevo juicio para que se reexaminara la causa de acción de cobro de dinero mediante un procedimiento ordinario y así contar con la oportunidad de realizar descubrimiento de prueba.

En respuesta, el 20 de febrero de 2026, la parte apelada presentó su *Oposición a Moción en Solicitud de Nuevo Juicio.*[10] En la misma, argumentó que el Foro Primario basó su determinación en la aplicación del contrato entre las partes a los hechos probados en el juicio, y no en un estado de cuenta. Por ello, sostuvo que la prueba en controversia no hubiese alterado el resultado del caso. Además, arguyó que la prueba invocada por la parte apelante no cumplió con los requisitos establecidos en la Regla 48 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 48. Ese mismo día, el Foro Primario declaró *No Ha Lugar* la petición de nuevo juicio.[11]

Inconforme, el 27 de febrero de 2026, la parte apelante presentó el recurso de epígrafe. En el mismo, señaló la comisión de los siguientes errores:

> Erró el TPI al conceder la suma total de $1,010,621.58, ya que UE no presentó ningún documento o algún otro tipo de prueba para demostrar y justificar el que MTL está obligada a satisfacer dicha suma, lo cual incide sobre la reclamación de cobro de dinero que UE acumuló con la demanda de desahucio y el reclamo de desahucio en sí.
>
> Erró el TPI al denegar la Moción de Nuevo Juicio toda vez el documento que UE produjo luego de celebrada la vista en su fondo privó a MTL de un debido proceso de ley al no tener la oportunidad de contar con un estado de cuenta con un balance real, evidencia sustancial que le habría permitido cuestionar de manera más certera la cantidad reclamada por UE.

Habiendo examinado el trámite procesal del presente caso a la luz de la normativa vigente aplicable, estamos en posición de disponer del asunto en cuestión.

**II**

---

[10] *Íd.*, Entrada Núm. 23.
[11] Apéndice del recurso, Entrada Núm. 24.

**A**

En nuestro ordenamiento, como norma general, un tribunal apelativo está impedido de sustituir o descartar, por sus propias apreciaciones, las determinaciones de hechos que realiza el foro sentenciador, fundamentando su proceder en un examen del expediente sometido a su escrutinio. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 772 (2013). Lo anterior debido a que, de ordinario, el Tribunal de Primera Instancia es quien está en mejor posición para aquilatar la prueba testifical que ante sí se presentare, puesto que es quien oye y observa declarar a los testigos. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778-779 (2022)*; Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020); *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004).

Ahora bien, la normativa antes expuesta no es de carácter absoluto. Si bien el arbitrio del Foro Primario es respetable, sus dictámenes están sujetos a que los mismos se emitan conforme a los principios de legalidad y justicia. *Méndez v. Morales*, 142 DPR 26, 36 (1996). Al amparo de ello, el ordenamiento jurídico vigente dicta que el criterio de deferencia antes aludido cede, entre otras instancias, cuando se determina que el juzgador de hechos incurrió en pasión, prejuicio, parcialidad o error manifiesto. *Gómez Márquez et al. v. El Oriental,* supra, pág. 793. Así pues, el desempeño de la función revisora del Tribunal de Apelaciones y del Tribunal Supremo se fundamenta en que **el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó.** *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013). Es decir, nuestra función de aplicar y pautar el derecho requiere saber cuáles son los hechos, tarea que corresponde al foro de instancia primeramente. *Íd.*

**B**

La acción de *desahucio* es un procedimiento especial de carácter sumario y restitutorio de la posesión de un bien inmueble, en virtud del cual se provee para el lanzamiento de quien la detenta ilegalmente. *Adm. Vivienda Pública v. Vega Martínez,* 200 DPR 238, 240 (2018); *ATPR v. SLG Volmar-Mathieu,* 196 DPR 5, 9-10 (2016); *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 749 (1987). La acción de desahucio no dirime titularidad, sino quién tiene mejor derecho a poseer. *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971).

A tal efecto, el Artículo 620 del Código de Enjuiciamiento Civil, reza como sigue:

> Tienen acción para promover el juicio de desahucio los dueños de la finca, sus apoderados, los usufructuarios o cualquiera otro que tenga derecho a disfrutarla y sus causahabientes.

> 32 LPRA sec. 2821.

Por su parte, el Artículo 621 del Código de Enjuiciamiento Civil expresa que:

> [p]rocederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario de sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna.

> 31 LPRA sec. 2822.

La acción de desahucio no dirime titularidad, sino quién tiene mejor derecho a poseer. *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971).

**C**

Las Reglas de Procedimiento Civil establecen un proceso mediante el cual, por los motivos ahí consignados, puede concederse la celebración de un nuevo juicio. Específicamente, la Regla 48.1 de Procedimiento Civil, 32 LPRA Ap. V R. 48.1, establece que:

Se podrá ordenar la celebración de un nuevo juicio por cualquiera de los motivos siguientes:

(a) Cuando se descubra evidencia esencial la cual, a pesar de una diligencia razonable, no pudo descubrirse ni presentarse en el juicio.

(b) Cuando no sea posible preparar una exposición en forma narrativa de la evidencia u obtener una transcripción de los procedimientos.

(c) Cuando la justicia sustancial lo requiere. El tribunal podrá conceder un nuevo juicio a todas o cualesquiera de las partes y sobre todas o parte de las cuestiones litigiosas.

Ahora bien y en lo pertinente, en la jurisprudencia interpretativa de la Regla 48.1 de las de Procedimiento Civil, *supra*, se han establecido unos requisitos aplicables cuando la solicitud de nuevo juicio se fundamenta en el descubrimiento de nueva evidencia. A saber, "[l]a parte que solicita el nuevo juicio debe demostrar que: (1) la prueba recién descubierta no es acumulativa ni repetitiva, sino que es esencial para resolver el caso; (2) que dicha prueba, de ser admitida, cambiaría el resultado del pleito; y (3) que la prueba, y no simplemente su pertinencia, ha sido descubierta luego de concluido el juicio. *First Bank of Puerto Rico v. Inmob. Nac., Inc.*, 144 DPR 901, 911 (1998).

**III**

En su primer señalamiento de error, la parte apelante sostiene que incidió el Tribunal de Primera Instancia al conceder la suma de un millón diez mil seiscientos veintiún dólares con cincuenta y ocho centavos ($1,010,621.58), por cuanto la parte demandante no presentó prueba documental ni testifical que justificara dicha cuantía, lo cual incide tanto sobre la reclamación de cobro de dinero como sobre el remedio de desahucio concedido. Habiendo examinado el referido señalamiento a la luz de los hechos establecidos y del derecho aplicable, concluimos que se presentó evidencia sobre la procedencia de la acción de cobro de dinero. Sin embargo, no está claro cómo el Foro Primario arribó a la totalidad de la suma concedida al no detallar las partidas. Veamos.

Conforme al derecho previamente expuesto, el desempeño de la función revisora de este Tribunal de Apelaciones requiere que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba presentada. Es decir, la función de aplicar y pautar el derecho exige conocer cuáles fueron los hechos determinados por el foro primario, tarea que le corresponde inicialmente al Tribunal de Primera Instancia.

Del examen del expediente ante nuestra consideración, de la Transcripción de la Prueba Oral surge que UE logró establecer la existencia del contrato de arrendamiento suscrito entre las partes, los cánones mensuales pactados, así como la notificación de terminación del contrato. De igual forma, se acreditó mediante la lectura en sala del contrato que, de permanecer la parte apelante en el local con posterioridad a la terminación, debía pagar una suma equivalente a dos puntos cinco (2.5) veces el canon de arrendamiento, y que todo pago no recibido a su vencimiento generaría una penalidad de diez por ciento (10%) sobre el monto adeudado por cada día de mora. Sin embargo, de la totalidad de la prueba desfilada no surge cómo el Tribunal de Primera Instancia determinó la cuantía de la deuda adjudicada.

En particular, no surge de la *Sentencia* apelada ni de la prueba desfilada cómo el Tribunal de Primera Instancia determinó que la deuda ascendía a la suma de $1,010,621.58. El Foro Primario no desglosó las partidas correspondientes a cánones adeudados, cargos por permanencia posterior a la terminación del contrato ni penalidades por mora, ni explicó el método utilizado para arribar a la referida cuantía. Más aún, de la propia Transcripción de la Prueba Oral no surge prueba alguna que explicara cómo arribar a dicha suma, siendo que la única referencia a la misma provino del testimonio del señor Vázquez Collazo, quien expresó desconocerla y

haber realizado gestiones para conocer el balance adeudado sin obtener respuesta. Por su parte, la señora Negrón Díaz testificó que desconocía si se había remitido alguna reclamación, debido a que las comunicaciones relacionadas con balances y reclamaciones correspondían al Departamento de Contabilidad. Ante ello, procede devolver el caso para que, con la prueba desfilada, el Tribunal de Primera Instancia determine las partidas correspondientes y establezca, de forma específica, cómo la deuda de la parte apelante, en concepto de cánones de arrendamiento tardío más cargos en concepto de mora, asciende a $1,010,621.58.

Ahora bien, en cuanto a la acción de desahucio, surge claramente del expediente que la parte apelante incumplió con el pago de los cánones de arrendamiento, por lo que procedía decretar su desalojo al haber perdido su derecho a continuar ocupando el espacio arrendado.

En su segundo señalamiento de error, la parte apelante sostiene que incidió el Tribunal de Primera Instancia al denegar la *Moción de Nuevo Juicio*, por cuanto un documento producido con posterioridad a la celebración de la vista en su fondo le privó de un debido proceso de ley al no contar con un estado de cuenta que le permitiera cuestionar la cantidad reclamada. Evaluado el referido señalamiento, concluimos que la parte apelante erra en su raciocinio.

Según esbozado previamente, la Regla 48.1 de Procedimiento Civil, *supra*, permite la concesión de un nuevo juicio en circunstancias limitadas, entre ellas, cuando se descubre evidencia esencial que no pudo ser presentada mediante diligencia razonable. No obstante, la parte promovente viene obligada a demostrar, entre otros requisitos, que dicha evidencia no es acumulativa y que, de ser admitida, cambiaría el resultado del pleito.

A la luz del expediente ante nos, aun si se considerara el documento al que alude la parte apelante, lo cierto es que el mismo no alteraría el resultado del pleito. Como resolviéramos anteriormente, la determinación del Tribunal de Primera Instancia en cuanto al incumplimiento contractual y la procedencia del desahucio encuentra apoyo en el expediente. La controversia que subsiste se circunscribe a la cuantía adjudicada, la cual requiere que el Foro Primario, con la prueba desfilada, determine las partidas correspondientes y establezca, de forma específica, cómo llega a la suma adjudicada. En consecuencia, no se configuran los requisitos necesarios para la concesión de un nuevo juicio, por lo que actuó correctamente el foro primario al denegar la moción presentada.

**IV**

Por los fundamentos antes expuestos, se confirma la acción de desahucio y se devuelve al Tribunal de Primera Instancia la acción de cobro de dinero para que, con la prueba presentada, determine las partidas correspondientes que sustenten la cuantía adjudicada de $1,010,621.58.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones